UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WILLIAM W. BOSTER, JR.,

        Plaintiff,

v.                                    Civil action no. 2:17-cv-3857

LIVE WELL FINANCIAL, INC.,
And COMPU-LINK CORPORATION
d/b/a Celink,

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

        Pending is the motion to dismiss, filed by defendant
Live Well Financial, Inc. on August 28, 2017, and the joinder
motion to dismiss, filed by defendant Compu-Link Corporation
d/b/a Celink on August 29, 2017.

I. Factual and Procedural Background

        This is a civil action to quiet plaintiff's title in
his personal residence.  Compl. ¶ 1.  Plaintiff, William Boster,
resides in a home that was previously owned by his parents,
William Wayne Boster, Sr. and Wanda Jean Boster.  <u>Id.</u> at ¶¶ 5-6,
8.  Following his father's death, Wanda Boster "deeded ownership
of the home in which she lived to plaintiff . . . reserving to
herself a life estate."  <u>Id.</u> at ¶ 7.  Mr. Boster later moved
into the home to care for his mother.  <u>Id.</u> at ¶ 8.  On July 9,
2007, Wanda Boster granted her son "a durable power of attorney

authorizing plaintiff to handle her personal, medical, and financial affairs, including power to encumber the life estate which constituted her only real property." Id. at ¶ 9.

Because of Wanda Boster's deteriorating health and associated costs, in 2014, Mr. Boster, on his mother's behalf, obtained a Home Equity Conversion Mortgage, known commonly as a reverse mortgage, on the home from Proficio Mortgage Ventures LLC ("Proficio"). Id. at ¶¶ 11, 23-25. Proficio was authorized to make reverse mortgages, between the years 2006 and 2016, pursuant to the license issued to it by the West Virginia Commissioner of Financial Institutions. Compl. ¶¶ 11-12. A reverse mortgage is "a nonrecourse loan secured by real property which[] (1) [p]rovides cash advances to a borrower based on the equity in a borrower's owner-occupied principal residence . . . [and] (2) [r]equires no payment of principal or interest until the entire loan becomes due and payable." W. Va. Code § 47-24-3; see also Reverse Annuity Mortgage, Black's Law Dictionary (10th ed. 2014).

Proficio represented to Mr. Boster, on behalf of his mother, "that it would extend an open-end, revolving reverse mortgage loan to [his] 79 year-old mother." Compl. ¶ 27. Because Ms. Boster only had a life estate in the property, Proficio also "required [that] plaintiff separately obligat[e]

his own fee simple remainder interest to secure payment by [cosigning] the Deeds of Trust in Proficio's favor, even though plaintiff would not have any contractual right to obtain [or] use the line of credit in his personal capacity." Id. at ¶¶ 28-29. At the closing of the reverse mortgage loan, plaintiff signed "two[1] Fixed Rate Note-Open End (Home Equity Conversion) instruments" on behalf of his mother, a "Home Equity Conversion Mortgage Loan Agreement Open End" on behalf of his mother, and Deeds of Trust[2] which he signed both on behalf of his mother and separately in his personal capacity. Id. at ¶¶ 30-34. The Deeds of Trust identified plaintiff as "remainderman" and Ms. Boster as the "grantor/borrower." Id. at ¶¶ 33-34. Only the Deeds of Trust were signed by the plaintiff in his personal capacity.

At some point after the reverse mortgage loan was made, defendant Live Well Financial, Inc. ("Live Well") took the loan by assignment from Proficio. Id. at ¶ 16. Live Well is also authorized to make and own reverse mortgage loans in West

---

[1] While the complaint states that Mr. Boster signed two Fixed Rate Note-Open End instruments, Compl. ¶ 30, he provides no additional details on the content of the Notes, or the reason why there were two associated with the reverse mortgage. See generally Compl.

[2] Plaintiff provides no information on the reason for the multiple Deeds of Trust, nor does he draw any distinctions between them. See generally Compl.

Virginia pursuant to the license issued to it by the West Virginia Commissioner of Financial Institutions. <u>Id.</u> at ¶¶ 14-15. The loan is serviced by defendant Compu-Link Corporation d/b/a Celink ("Celink") who is similarly licensed to service loans in West Virginia. <u>Id.</u> ¶ 20.

Ms. Boster's full debt was due on April 14, 2085, but the lender was allowed to accelerate the debt if, in pertinent part:

> (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or
> . . .
> (iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or
>
> (iv) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or
>
> (v) An obligation of the Borrower under this Security Instrument is not performed.

Fixed Rate Home Equity Conversion Second Deed of Trust a Credit Line Deed of Trust[3] Ex. 2 to Pl.'s Resp. to Def. Live Well's Mot.

---

[3] The court notes that this document was not attached to the complaint and will not be considered to the extent that plaintiff offers it to make new factual allegations, as that would be an impermissible amendment of the pleading through briefing. <u>See</u> <u>Walk at Broadlands Homeowner's Ass'n, Inc. v.</u> <u>OpenBank at Broadlands, LLC</u>, 713 F.3d 175, 184 (4th Cir. 2013)

Dismiss at pp. 1, 4; see also W. Va. Code § 47-24-4(g).  Ms.
Boster's health further declined such that she was transferred
into a nursing home in November of 2016.  Compl. ¶ 37.  On
November 25, 2016, Ms. Boster passed away.  Id.

    Plaintiff alleges that "[b]eginning when his mother
required nursing home care, defendants wrongly began attempts to
collect payment of Ms. Boster's reverse mortgage loan."  Id. at
¶ 38.  Celink told Mr. Boster that "unless he personally paid
the amount claimed due," Live Well would sell the home to pay
off the loan.  Id. at ¶ 39.  On November 16, 2016, defendants,
by their debt collection agent Samuel L. White, P.C., "falsely
represented that the terms of the Fixed Rate Note-Open End
[("the Notes")] had been breached 'by reason of your failure to
pay the installments'" because the Notes required no installment
payments.  Id. at ¶ 40.  The letter demanded payment of the
entire loan by December 16, 2016 in order to cure the purported
breach.  Id. at ¶ 41.  Plaintiff asserts that the amount
demanded included "fees and charges not allowed by West Virginia
law, including 'property inspection' fees," and that the letter
"wrongfully and unlawfully [represented] that defendants could
sell plaintiff's home if the amount demanded was not paid by the

---

("It is well-established that parties cannot amend their
complaints through briefing or oral advocacy.").

date stated." <u>Id.</u> at ¶¶ 42-43. Mr. Boster received a second letter on December 27, 2016, which was sent by defendants' debt collection agent Seneca Trustees, Inc. <u>Id.</u> at ¶ 44. This letter "wrongfully and unlawfully" represented that defendants would collect the amount due "by selling plaintiff's home on the steps of the Kanawha County courthouse on February 9, 2017." <u>Id.</u>

In January of 2017, Mr. Boster "discovered facts constituting all the elements of a cause of a cause of action under W. Va. Code Article § 31-17 and Article § 47-24, and their implementing regulations." <u>Id.</u> at ¶ 47. Mr. Boster alleges that Proficio contracted for and collected illegal charges and fees, took a security interest in excess of that permitted by W. Va. Code R. § 106-9-6.6, and "otherwise failed to comply with the prerequisites [of W. Va. Code] Article § 47-24 and its implementing regulations." <u>Id.</u> at ¶¶ 48-49. Mr. Boster argues that the reverse mortgage and Deeds of Trust securing it are "void and unenforceable by operation of law, including pursuant to W. Va. Code § 31-17-17." <u>Id.</u> at ¶ 52. Therefore, plaintiff states that he may not be held liable for the repayment of the reverse mortgage loan through the sale of the home. <u>Id.</u> at ¶ 55.

On July 3, 2017, Mr. Boster brought this action in the Circuit Court of Kanawha County, West Virginia. With the consent of Celink, Live Well timely removed the case to this court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. Notice of Removal at ¶¶ 6, 11. Plaintiff asserts two counts against the defendants in connection with these events. First, Mr. Boster asks that the court "declare defendants' claimed lien void and unenforceable, and to enter a preliminary and a permanent injunction barring defendants from any action to enforce or assign it." Id. at ¶ 59. Mr. Boster asserts that the lien is unenforceable because the reverse mortgage violates the West Virginia Residential Mortgage Lender, Broker, and Servicer Act ("RMLBSA"), W. Va. Code § 31-17-1, et seq., the West Virginia Reverse Mortgage Enabling Act ("Reverse Mortgage Act"), W. Va. Code § 47-24-1, et seq., and the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-2-104(a). See Id. at ¶¶ 47-49, 53-55. Second, he asserts that defendants engaged in illegal debt collection acts in violation of provisions of the WVCCPA, W. Va. Code §§ 46A-2-127, 46A-2-128. Id. ¶¶ 66-67.

Defendants seek to dismiss the entire two-count complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant Live

Well asserts that Count I of the complaint fails because it is (1) untimely, (2) does not adequately plead any violations of the RMBLSA, (3) pleads no facts to support a violation of the Reverse Mortgage Act, and (4) Mr. Boster is not a "cosigner" eligible for protection under the WVCCPA.  See Def. Live Well's Mem. Supp. Mot. Dismiss ("Live Well Mem.") at 7-12. Furthermore, Live Well seeks to dismiss Count II of the complaint, alleging that Mr. Boster does not have standing to bring the claim, as he is not a "consumer" under the WVCCPA. Id. at 4.  Defendant Celink joins and adopts all of these arguments for dismissal, and further adds that Count II fails because the complaint fails to include sufficient factual allegations to support plaintiff's claims for fraudulent, deceptive, or misleading representations, and unfair and unconscionable means of collection under the WVCCPA.  Def. Celink's Mem. Supp. Mot. Dismiss ("Celink Mem.") at 2-3.

## II. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Correspondingly, Rule 12(b)(6) provides that a pleading may be dismissed for a "failure to state a claim upon which relief can be granted.

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); see also <u>Monroe v. City of Charlottesville</u>, 579 F.3d 380, 386 (4th Cir. 2009) (quoting <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008)). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citation omitted); see also <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); <u>Andrew v. Clark</u>, 561 F.3d 261, 266 (4th Cir. 2009) (quoting <u>Twombly</u>, 550 U.S. at 555).

A district court's evaluation of a motion to dismiss is underlain by two principles. First, when considering a motion to dismiss, the court "must accept as true all of the factual allegations contained in the [pleading]." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation omitted); see also <u>Twombly</u>, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citations omitted). In

doing so, factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true. Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, the court must "draw[] all reasonable factual inferences . . . in the [nonmovant's] favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); see also Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) ("[T]he complaint is to be liberally construed in favor of plaintiff.").

### III. Analysis

A. Count I

Count I of the complaint asks that the court declare defendants' lien void and unenforceable and enter an injunction barring defendants from any effort to enforce or assign the reverse mortgage. Compl. ¶ 59. Mr. Boster claims that the reverse mortgage agreement violated the RMLBSA, the Reverse Mortgage Act, and the WVCCPA. Specifically, he asserts that (1) the reverse mortgage included "illegal charges, fees, and closing[] costs . . . including an origination fee that exceeded 2% of the value of the real estate as lawfully calculated, an illegal 'MERS' charge, an illegal counseling fee, [and] an

illegal closing fee," in violation of the RMLBSA and Reverse Mortgage Act; (2) that Proficio "took a security interest to guarantee payment in excess of that permitted by [W. Va. Code R.] § 106-9-6.6," and that Proficio otherwise "failed to comply with the prerequisites [of the Reverse Mortgage Act] and its implementing regulations require[ed] to make any reverse mortgage loan secured by residential real estate in West Virginia;" and (3) that Proficio failed to comply with notice requirements for cosigners, as required by the WVCCPA. Id. at ¶¶ 47-49, 53-54.

Each basis offered by plaintiff for declaring the loan void will be separately considered.

i. Violations of RMBLSA

Under the RMBLSA, a court may cancel "any primary or subordinate mortgage loan . . . made in willful violations of the provisions of this article." W. Va. Code § 31-17-17(a). Defendants argue that plaintiff's claims of "illegal charges, fees, and closing costs" are untimely and barred by the statute of limitations, and that the claim is not sufficiently pled because the complaint fails to specify the applicable sections of RMBLSA that were allegedly violated. Live Well Mem. at 7, 9-10.

a. Statute of Limitations

Federal courts sitting in diversity apply state statutes of limitations to state law claims. See Walker v. Armco Steel Corp., 446 U.S. 740, 753, 100 S. Ct. 1978, 64 L. Ed. 2d 659 (1980). To determine whether an action is time-barred, the Supreme Court of Appeals of West Virginia has outlined a five-step analysis that courts should follow:

> First, the court should identify the applicable statute of limitation for [the] cause of action. Second, the court . . . should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action . . . . Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.

Syl. Pt. 5, Dunn v. Rockwell, 225 W. Va. 43, 689 S.E.2d 255, 258 (W. Va. 2009). Defendants assert that the applicable statute of limitations should be two years pursuant to W. Va. Code § 55-2-12, which provides that

> [e]very personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall

have accrued, if it be for damage to property; (b)
within two years next after the right to bring the
same shall have accrued if it be for damages for
personal injuries; and (c) within one year next after
the right to bring the same shall have accrued if it
be for any other matter of such nature that, in case a
party die, it could not have been brought at common
law by or against his personal representative.

Id. In support of this contention, defendants note that this
district has previously held claims brought pursuant to section
31-17-17 of the RMBLSA are barred by this statute of
limitations. See Woods v. Reverse Mortg. USA, Inc., No. 2:17-
cv-0256, 2017 U.S. Dist. LEXIS 161500 (S.D. W. Va. Sept. 29,
2017); Lavis v. Reverse Mortg. Sols., LLC, No. 5:17-cv-0209,
2017 U.S. Dist. LEXIS 89144 (S.D. W. Va. June 9, 2017). Mr.
Boster, on the other hand, contends that his claim under Count I
is purely equitable, as it seeks to quiet title in the property,
and is not subject to the statute of limitations.

        "Where a suit . . . is not for damages but seeks to
rescind a writing or impose a trust or other equitable relief,
it is not a common law action for fraud but is equitable in
nature. Consequently, the doctrine of laches is applicable
rather than any specific statute of limitations period." Syl.
Pt. 7, Dunn, 689 S.E.2d at 258. However, "[t]his is not to say
that there is no time limit for filing an equitable cause of
action." Id. at 267 n.11. "Laches applies to equitable demands

where the statute of limitation does not." Syl. Pt. 2, <u>Condry v. Pope</u>, 152 W. Va. 714, 166 S.E.2d 167, 167 (W. Va. 1969).

"Laches is a delay in the assertion of a known right which works to the disadvantage of another." Syl. Pt. 2, <u>Bank of Marlinton v. McLaughlin</u>, 123 W. Va. 608, 17 S.E.2d 213, 214 (W. Va. 1941). But "[m]ere delay will not bar relief in equity on the ground of laches." Syl. Pt. 1, <u>State ex rel. Smith v. Abbot</u>, 187 W. Va. 261, 418 S.E.2d 575, 576 (W. Va. 1992). Instead, the West Virginia Supreme Court "has consistently emphasized the necessity of a showing that there has been a detrimental change of position in order to prove laches." <u>Dunn</u>, 689 S.E.2d at 267 (citing <u>Maynard v. Board of Educ. of Wayne Cnty.</u>, 178 W. Va. 53, 357 S.E.2d 246, 253 (W. Va. 1987); Syl. Pt. 3, <u>Carter v. Price</u>, 85 W. Va. 744, 102 S.E. 685 (W. Va. 1920)).

Plaintiff appears to have intentionally pled his claim under W. Va. Code § 31-17-17 for equitable relief only even though the statute permits a party to seek damages, should one so choose. <u>See</u> Pl.'s Resp. to Def. Live Well's Mot. Dismiss at 13; <u>compare</u> W. Va. Code § 31-17-17(a) <u>with</u> § 31-17-17(c). Notably, the plaintiffs in both <u>Woods</u> and <u>Lavis</u> sought damages in addition to the equitable relief permitted by the statute. <u>See</u> <u>Woods</u> Complaint, attached as Ex. A to Notice of Removal,

Docket No. 1-1 at pp. 13-14, 2:17-cv-0256, Jan. 6, 2017; Lavis
Complaint, attached as Ex. A to Notice of Removal, Docket No. 1-
1 at pp. 15-16, 5:17-cv-0209, Jan. 6, 2017.  Thus, under West
Virginia law, laches, rather than a statute of limitations,
applies to Mr. Boster's request for declaratory and injunctive
relief.  Therefore, "[o]ur analysis . . . is at an end, and we
need not consider the remaining steps in our five-step
analysis." Dunn, 689 S.E.2d at 267.  Despite this, the Court
must still analyze whether laches bars this claim.

        First, it must be noted that a motion under 12(b)(6)
ordinarily "cannot reach the merits of an affirmative defense,
such as that the plaintiff's claim is time-barred." Goodman v.
Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).  An exception,
applicable "where facts sufficient to rule on an affirmative
defense are alleged in the complaint," requires that all "facts
necessary to the affirmative defense 'clearly appear[] on the
face of the complaint.'" Id. (quoting Richmond, Fredericksburg
& Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).  For
laches to bar a claim, the defendant must establish a
detrimental change of position as a result of a plaintiff's
delay in bringing the action.  See White v. Daniel, 909 F.2d 99,
102 (4th Cir. 1990) ("Laches imposes on the defendant the
ultimate burden of proving '(1) the lack of diligence by the

party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.") (citing <u>Costello v. United States</u>, 365 U.S. 265, 282, 81 S. Ct. 534, 5 L. Ed. 2d 551 (1961)).

No party addressed the issue of laches in the briefing, and so defendants have not pointed to any prejudice to them arising from Mr. Boster's delay in filing this suit. While the complaint clearly indicates when the reverse mortgage loan was made, Compl. ¶¶ 50, 52, it does not include facts that clearly indicate defendants' detrimental change in position as a result of the allegedly dilatory action. Nevertheless, some courts presume prejudice applies in certain cases.

"Under equitable principles the statute of limitations applicable to analogous actions at law is used to create a 'presumption of laches.' This principle 'presumes' that an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period." <u>Tandy Corp. v. Malone & Hyde, Inc.</u>, 769 F.2d 362, 365 (6th Cir. 1985). Some courts agree with the Sixth Circuit's bright-line principle. <u>See, e.g.</u>, <u>Ashley v. Boyle's Famous Corned Beef Co.</u>, 66 F.3d 164, 169 n.3 (8th Cir. 1995) ("But even when applying laches to an equitable claim, courts apply a presumption that the action is not barred if brought within the statute of

limitations period for 'analogous' actions at law."), <u>overruled on other grounds by</u> <u>Rowe v. Hussmann Corp.</u>, 381 F.3d 775, 782 n.6 (8th Cir. 2004).  Others, however, view the analogous statute of limitations more as a benchmark. <u>See, e.g.</u>, <u>DeSilvio v. Prudential Lines, Inc.</u>, 701 F.2d 13, 15 (2d Cir. 1983) ("In analyzing whether a party is guilty of laches, a district court may not mechanically apply the local statute of limitations.").

"When federal courts, in the exercise of their equitable power, consider laches, they are guided by the limitations period that they would borrow for actions at law and presume that if an equitable claim is brought within the limitations period, it will not be barred by laches." <u>Lyons P'ship, L.P. v. Morris Costumes, Inc.</u>, 243 F.3d 789, 799 (4th Cir. 2001), <u>abrogated in part by</u> <u>Petrella v. Metro-Goldwyn-Mayer, Inc.</u>, 134 S. Ct. 1962 (2014), (citing, among others, <u>Tandy</u> 769 F.2d at 365-66).  Additionally, several short <u>per curiam</u> opinions from the Fourth Circuit Court of Appeals indicate its willingness to presume prejudice as a result of dilatoriness in bringing an equitable action.  <u>See</u> <u>Riddick v. Baltimore Steam Packet Co.</u>, 374 F.2d 870, 871 (4th Cir. 1967) (per curiam) (recognizing a "presumption of prejudice"); <u>Davis v. Nelson</u>, 285 F.2d 214, 215 (4th Cir. 1960) (per curiam) ("As this delay of nearly seven years exceeds any possibly applicable

limitations period, it became the duty of the libellant to plead and prove facts negativing a presumption of prejudice from inexcusable delay.  The presumption would be against prejudice if suit had been brought during the legal period of limitations.").  But see Giddens v. Isbrandtsen Co., 355 F.2d 125, 128-29 (4th Cir. 1966) (reversing the district court's application of laches because "Giddens' dereliction alone did not establish laches" and because "the shipowner presented no proof of prejudice beyond the inference arising from the procrastination").

Additionally, the Northern District of West Virginia has adopted the Tandy presumption on several occasions.  See Litten v. Quicken Loans, Inc., No. 1:13CV192, 2013 U.S. Dist. LEXIS 161172 ( N.D. W. Va. Nov. 12, 2013);  Heavener v. Quicken Loans, Inc., No. 3:12CV68, 2013 U.S. Dist. LEXIS 79006 (N.D. W. Va., June 5, 2013); May v. Nationstar Mortg., LLC, No. 3:12CV43, 2012 U.S. Dist. LEXIS 102956 (N.D. W. Va., July 24, 2012); In re Consolidation Coal Co., 228 F. Supp. 2d 764, 768-69 (N.D.W. Va. 2001)

Here, the analogous statute of limitations for claims brought under RMBLSA is two years.  See W. Va. Code § 55-2-12; Woods 2017 U.S. Dist. LEXIS 161500; Lavis 2017 U.S. Dist. LEXIS 89144; CSX Transp., Inc. v. Gilkison, No. 5:05CV202, 2008 U.S.

Dist. LEXIS 25241 (N.D.W. Va., Mar. 28, 2008) (citing <u>Alpine</u> <u>Prop. Owners Ass'n, Inc. v. Mountaintop Dev. Co.</u>, 179 W. Va. 12, 365 S.E.2d 57, 66 (W. Va. 1987)).  A cause of action under RMBLSA accrues "at the time the allegedly illegal fees are imposed — i.e., at closing."  <u>Woods</u> 2017 U.S. Dist. LEXIS 161500 at *26 (cataloguing cases).  Ms. Boster's reverse mortgage closed on March 20, 2014.  <u>See</u> Compl. ¶¶ 50, 52.  Consequently, the statute of limitations may have expired in March of 2016. Mr. Boster did not bring his claim under RMBLSA until July of 2017.  Whether laches applies requires an even more intensive fact-finding analysis.  <u>See</u> <u>White</u> 909 F.2d at 102 ("[W]hether laches bars an action depends upon the particular circumstances of the case.")  Without facts "clearly appear[ing] on the face of the complaint," <u>Richmond</u> 4 F.3d at 250, and with no argument on the application of laches to this claim, the court does not, at this juncture, find that defendants have experienced any prejudice or detrimental change in position to warrant a finding of laches, nor have they otherwise established laches.

b. Sufficiency of Pleadings

        Defendants contend that Mr. Boster failed to adequately plead a cause of action under the RMBLSA because he did not specify which sections of the statute Proficio had violated by the charging of allegedly improper fees.  <u>See</u> <u>Live</u>

Well Mem. at 9-10.  Additionally, defendants appear to argue
that the fees underlying Mr. Boster's RMBLSA claim were
"expressly permitted" by the law, and are therefore not
violations.  Id. at 10.

A complaint "does not require 'detailed factual
allegations.'"  Iqbal, 556 U.S. at 678.  It "need only give the
defendant fair notice of what the claim is and the grounds upon
which it rests."  E.I. du Pont de Nemours & Co. v. Kolon Indus.,
Inc., 637 F.3d 435, 440 (4th Cir. 2011).  Mr. Boster's complaint
alleges that he "discovered facts constituting all the elements
of a cause of action under W. Va. Code Article § 31-17," and
that Proficio "willfully contracted for and/or collected illegal
charges, fees, and closing[] costs" in violation of the law.
Compl. ¶¶ 47-48.  He then goes on to list the allegedly improper
charges as "an origination fee that exceeded 2% of the real
estate as lawfully calculated; an illegal 'MERS' charge; an
illegal counseling fee; an illegal $625.00 closing fee, etc."
Id. at 48.  This sufficiently alleges the purported violation of
the RMBLSA, and provides defendants with notice of the claim.[4]

---

[4] Based on the complaint, defendant Live Well was able to
determine that plaintiff's allegations amounted to an alleged
violation of W. Va. Code § 31-17-8.  Live Well Mem. at 9.

Defendants' further argument that the allegedly improper charges were expressly authorized by the law also fails to defeat plaintiff's claim.  Even if "recovery is very remote and unlikely" a well-pleaded complaint may survive a motion to dismiss.  <u>Twombly</u> 550 U.S. at 556 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).  The question is "not whether [the plaintiff] will ultimately prevail . . . but whether [the] complaint was sufficient to cross the federal court's threshold."  <u>Skinner v. Switzer</u>, 562 U.S. 521, 529-30 (2011). Mr. Boster's complaint sufficiently alleges that various charges were made in violation of the RMLBSA, but the minimal descriptions and listing of fees out of the context of the entire mortgage loan are not clearly permissible or impermissible at this juncture

Accordingly, defendants' motion to dismiss Count I insofar as it relates to the RMBLSA is denied.


ii. Violations of Reverse Mortgage Act and its Regulations

Mr. Boster also asserts that he is entitled to the equitable cancellation of the loan under the implementing regulations of the Reverse Mortgage Act.  He argues that Proficio "required and took a security interest to guarantee payment in excess of that permitted by [W. Va. Code R. § 106-9-

6.6, and otherwise failed to comply with the prerequisites [of

the Reverse Mortgage Act] and its implementing regulations

require[d] to make any reverse mortgage loan secure by

residential real estate in West Virginia."  Compl. ¶ 49.

Though not asserted by defendants, the court finds

that the Reverse Mortgage Act lacks a private cause of action.

The statute refers only to the penalties set forth in Chapter

31A of the W. Va. Code. See § 47-24-8. In pertinent part,

Chapter 31A provides:

> (b) Any person or financial institution which violates
> the provisions of this chapter, the rules adopted
> thereunder, or a lawful order of the commissioner or
> board, shall, unless previously fined under the
> provisions of subsection (a) of this section, be
> subject to civil penalties in an amount not more than
> five thousand dollars nor less than fifty dollars in
> civil actions brought by the commissioner or the
> board.

W. Va. Code § 31A-8F-22(b).  Mr. Boster cannot bring a private

claim for relief under the Reverse Mortgage Act.  See Woods 2017

U.S. Dist. LEXIS 161500 at *19.  Therefore, to the extent Count

I relies on purported violations of the Reverse Mortgage Act, it

must be dismissed.

### iii. Violations of WVCCPA

In relevant part, the WVCCPA provides that

> No person shall be held liable as cosigner, or be
> charged with personal liability for payment in a
> consumer credit sale, consumer lease or consumer loan
> unless that person, in addition to and before signing
> any instrument evidencing the transaction, signs and
> receives a separate notice which clearly explains his
> liability in the event of default by the consumer and
> also receives a copy of any disclosure required by the
> "Federal Consumer Credit Protection Act."

W. Va. Code § 46A-2-104(a). Asserting that he qualifies as a

"cosigner," Mr. Boster argues that Proficio did not comply with

these notice requirements, and that he "may not be held liable

for payment of his mother's reverse mortgage loan through the

sale of his home." Compl. ¶¶ 53-55. Defendants disagree that

plaintiff is considered a "cosigner," which is defined under the

WVCCPA as

> a natural person who assumes liability for the
> obligation on a consumer credit sale or consumer loan
> without receiving goods, services or money in return
> for the obligation or, in the case of a revolving
> charge account or revolving loan account of a
> consumer, without receiving the contractual right to
> obtain extensions of credit under the account. The
> term cosigner includes any person whose signature is
> requested as a condition to granting credit to a
> consumer or as a condition for forbearance on
> collection of a consumer's obligation that is in
> default. The term cosigner does not include a spouse
> whose signature is required to perfect a security
> interest. A person who meets the definition in this
> paragraph is a "cosigner" whether or not the person is
> designated as such on the credit obligation.

W. Va. Code § 46A-2-102(16).

Plaintiff emphasizes that the definition of a cosigner explicitly states that "any person whose signature is requested as a condition to granting credit to a consumer," is a cosigner, and that anyone "who meets the definition in this paragraph is a 'cosigner' whether or not the person is designated as such on the credit obligation." Plaintiff is not, however, being held liable as a cosigner because defendants now seek to foreclose on the home as authorized under his mother's reverse mortgage.

"[T]he option to pay money to retain collateral is not equivalent to a personal obligation to repay a discharged debt." Ballard v. Bank of America, N.A., No. 2:12-cv-2496, 2013 U.S. Dist. LEXIS 159428, *37 (S.D. W. Va. Nov. 7, 2013), aff'd Ballard v. Bank of America, N.A., 578 Fed. Appx. 226, 2014 U.S. App. LEXIS 13210 (4th Cir. 2014). In securing his mother's reverse mortgage as her power of attorney, Mr. Boster signed the Deeds of Trust that secured his mother's home as collateral for that reverse mortgage. See Compl. ¶¶ 30-34; Arnold v. Palmer, 224 W. Va. 495, 686 S.E.2d 725 (2009) (holding that a deed of trust "conveys title to real property in trust as security until the grantor repays the loan" and "[i]n the case of default of a debt secured by a deed of trust, the property becomes liable to sale . . ."). After Ms. Boster passed away, her debt was accelerated, and Mr. Boster has the option to pay that debt to

retain the property.  <u>See</u> W. Va. Code § 47-24-4(g).  This does not make him liable as a cosigner for the purposes of the WVCCPA.

Accordingly, because Mr. Boster does not meet the definition of a "cosigner," defendants' motion to dismiss for the remainder of Count I is granted.

B. Count II

Count II of the complaint alleges that defendants further violated the WVCCPA because, "[i]n attempting to collect the claim, defendants made false, misleading, and deceptive representations in violation of W. Va. Code § 46A-2-127," and "used unfair and unconscionable means in violation of W. Va. Code § 46A-2-128."  Compl. ¶¶ 66-67.  Mr. Boster requests that this court "quiet title to his home . . . and to award him all relief to which he may be entitled in law or equity, including a reasonable attorney fee and the costs of this litigation."  <u>Id.</u> at p. 10.  He asserts that he is entitled to this relief because "[t]he reverse mortgage loan is a 'claim' as defined by and subject to W, Va. Code § 46A-2-122 <u>et</u> <u>seq.</u>," "plaintiff is a 'consumer' as defined within and protected by W. Va. Code § 46A-2-122 <u>et</u> <u>seq.</u>," and defendants were "at all times 'debt collectors subject to and governed by W. Va. Code § 46A-2-122 <u>et</u> <u>seq.</u>"  <u>Id.</u> at ¶¶ 62-63, 65.

Defendants contend that Count II should be dismissed because Mr. Boster lacks standing to bring such an action under the WVCCPA, as he is not a "consumer" as defined therein. "Consumer" is defined twice in the WVCCPA.  Compare W. Va. Code § 46A-1-102(12) with W. Va. Code § 46A-2-122.  Because Count II raises causes of action under W. Va. Code §§ 46A-2-127 and 46A-2-128, the applicable definition of a "consumer" is the one found at 46A-2-122:  "For the purposes of this section and sections one hundred twenty-three, one hundred twenty-four, one hundred twenty-five, one hundred twenty-six, one hundred twenty-seven, one hundred twenty-eight, one hundred twenty-nine and one hundred twenty-nine-a of this article," a consumer is "any natural person obligated or allegedly obligated to pay any debt."  W. Va. Code § 46A-2-122.

As the court previously observed, Mr. Boster is not obligated to pay a debt as a "cosigner," and he is similarly unconstrained by any debt as a "consumer."  Although he signed the Deeds of Trust in his personal capacity, Mr. Boster did not sign the Notes, except as his mother's power of attorney, and he is not obligated to pay a debt merely because he could pay such a debt to retain the property.  Ballard 2013 U.S. Dist. LEXIS 159428 at *37; see Arnold, 224 W. Va. at 503 (finding that a promissory note is not enforceable against party who signed a

deed of trust but did not sign the promissory note, inasmuch as promissory notes and deeds of trust are separate legal documents with individual purposes); see also McNeely v. Wells Fargo Bank, N.A., 115 F.Supp.3d 779, 785 (S.D.W. Va. 2015) (holding that Mr. McNeely was not a "consumer" pursuant to W. Va. Code § 46A-2-122(a) because "Mr. McNeely did not sign and was not a party to either of the loans at issue, which were all signed by Ms. McNeely"); Bishop v. Quicken Loans, Inc., No. 2:09-1076, 2011 U.S. Dist. LEXIS 37647, at *32 (S.D.W .Va. Apr 4, 2011) (holding that plaintiff who executed a deed of trust, but not the underlying note, is not a "consumer" under the WVCCPA).

Though it is clear that Mr. Boster was not actually obligated to pay a debt, he has pled facts and allegations sufficient to leave open the question of whether or not he was "allegedly obligated" to pay a debt. See W. Va. Code § 46A-2-122. "Courts consider a person 'allegedly obligated' to pay a debt when the creditor has 'represented to [him] that [he] is personally liable on the debt." McNeely 115 F. Supp. 3d at 784 (S.D. W. Va. 2015) (quoting Fabian v. Home Loan Ctr., Inc., 2014 U.S. Dist. LEXIS 56954, *20 (N.D. W. Va. 2014). "The term 'alleged obligation' extends the reach of the WVCCPA to certain collection activities conducted without regard to whether the debt is actually owed." McGuire v. Jim Walter Homes, LLC, 2014

U.S. Dist. LEXIS 146198, *19 (S.D.W.Va. Oct. 14, 2014); see
Croye v. GreenPoint Mortg. Funding, Inc., 740 F. Supp. 2d 788,
787 (S.D. W. Va. 2010) ("While it is unlikely that Mr. Croye was
ever legally obligated to pay the mortgage loans . . . .
repeated efforts to collect payment from him suggest the
existence of an alleged obligation of Mr. Croye to pay the
loans.").

　　　　The complaint alleges that defendants misrepresented
that the loan required the payment of "installments," and that
the reverse mortgage had been "breached 'by reason of your
failure to pay the installments.'"  Compl. ¶ 40.  While Mr.
Boster had no personal liability, the complaint leaves open the
question of whether or not he was "allegedly obligated" based on
the collection practices used by defendants in communicating to
Mr. Boster.

　　　　The question is "not whether [the plaintiff] will
ultimately prevail . . . but whether [the] complaint was
sufficient to cross the federal court's threshold."  Skinner 562
U.S. at 529-30.  Mr. Boster sufficiently pleads that he may have
been treated by the defendants as "allegedly obligated" to pay
the reverse mortgage loan and Count II of the complaint should
not be disposed of presently.

### IV. Conclusion

Based upon the foregoing discussion, it is ORDERED that the defendants' motion to dismiss and joinder motion be, and hereby are, denied as to Count I, insofar as it relates to plaintiff's claims under the RMBLSA, and Count II. It is further ORDERED that the defendants' motion to dismiss and joinder motion be, and hereby are, granted as to the remainder of Count I.

The Clerk is directed to transmit copies of this written opinion and order to counsel of record and any unrepresented parties.

DATED: March 30, 2018

John T. Copenhaver, Jr.
United States District Judge