UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WILLIAM W. BOSTER, JR.,

       Plaintiff,

v.                    Civil Action No. 2:17-cv-03857

LIVE WELL FINANCIAL, INC. and
COMPU-LINK COPRORATION,
d/b/a CELINK,

       Defendants.


## MEMORANDUM OPINION AND ORDER


       Pending is a motion for summary judgment filed by the plaintiff, William W. Boster ("Mr. Boster"), on May 21, 2018, and a joint motion for summary judgment filed by the defendants, Live Well Financial, Inc. ("Live Well") and Compu-Link Corporation, d/b/a Celink ("Celink"), also on May 21, 2018.


### I. Background


       This case involves a dispute between Mr. Boster, who took out a reverse mortgage on behalf of his mother as her attorney-in-fact under a durable power of attorney, and Live Well and Celink, the servicer and sub-servicer of the loan. Mr. Boster now seeks to nullify the loan on the alleged grounds that it was illegal.

On June 26, 2007, Mr. Boster's Mother, Wanda Jean Boster, conveyed to the plaintiff a remainder interest in her home located in Nitro, West Virginia, in which she reserved a life estate for herself. Defs.' Mot. Summ. J., Ex. A at ¶ 4; Pl.'s Mot. Summ. J. 1. The mother died November 25, 2016. Defs.' Mot. Summ. J., Ex. A at ¶ 4. Mr. Boster currently resides in the home. Pl.'s Mot. Summ. J. 1.

In July 2007, Wanda Jean Boster provided Mr. Boster with a power of attorney over "any mortgages, loans, deed of trust on any of [her] real property or interests." Defs.' Mot. Summ. J., Ex. A. at ¶ 4. In March 2014, several years after the creation of the remainder interest, Mr. Boster sought a reverse mortgage loan on behalf of his mother to provide necessary funds for her care. Defs.' Mot. Summ. J. 3; Pl.'s Mot. Summ. J. 1. To obtain the loan through the Home Equity Conversion Mortgage ("HECM") program, the plaintiff attended required counseling wherein he signed the Certificate of HECM Counseling, which provided that the HECM would be "due and payable when no remaining borrower lives in the mortgaged property, or when any other covenants of the mortgage have been violated. (Borrowers are those parties who have signed the Note and Mortgage or Deed of Trust.)" Defs.' Mot. Summ. J. 3-4, Ex A ¶ 4; Ex. D. As will

be seen, Mr. Boster did not sign the Note in issue here and thus was not a "borrower."

On March 20, 2014, Mr. Boster, solely as attorney-in-fact for his mother, executed two promissory notes for a federally-insured loan under the HECM program, one with Proficio Mortgage Ventures LLC ("Proficio"), and the other with the Secretary of HUD (collectively, the "Note"). Defs.' Mot. Summ. J. at Ex. E ¶ 5; Ex. F. Mr. Boster signed the Note as "Wanda Jean Boster by William Wayne Boster, as Attorney-in-Fact" and signed a "Home Equity Conversion Mortgage Loan Agreement" ("Loan Agreement") as his mother's attorney-in-fact. Id. at Ex. A ¶ 4; Ex. G. And so, he signed neither the Note nor the Loan Agreement in his personal capacity. Id. at 4; Compl. ¶ 32.

Because Mr. Boster held a remainder interest in the property, he signed two deeds of trust ("Deed of Trust"), which pledged the property as collateral for the Note. Id. at Ex. E ¶ 4; Ex. H.[1] The Deed of Trust required payment of "all property charges consisting of taxes . . . and hazard insurance premiums." Id. at Ex. H. It stated that the lender could collect fees and charges authorized by HUD as grounds for acceleration, and also require payment in full if "[a] Borrower

---

[1] The Note, Loan Agreement, and Deed of Trust collectively are referred herein as the "Reverse Mortgage" or the "Loan."

dies and the Property is not the principal residence of at least one surviving Borrower." Id. The Loan could also be declared due and payable, with HUD's approval, if "[a]n obligation of the Borrower under th[e] Security Instrument is not performed." Id.

Mr. Boster also signed four documents as attorney-in-fact which explained his role as a non-borrowing resident: (1) Non-Borrowing Resident Disclosure; (2) Important Notice to Non-Borrowing Spouse or Resident; (3) Ownership Interest Certification; and (4) Notice to Non-Borrowing Spouse or Resident. Defs.' Mot. Summ. J. at Ex. A ¶ 4; Ex. I. Each document indicated that "[i]f the borrowing homeowner predeceases you or otherwise no longer occupies the property as their property residence, the reverse mortgage will become due and payable." Id. at Ex. I.

Defendant Live Well took the Loan by assignment from Proficio on April 2, 2014. Compl. ¶ 16; Defs.' Mot. Summ. J. at Ex. E ¶ 3. The Loan was serviced by defendant Celink. Compl. ¶ 20; Defs.' Mot. Summ. J. at Ex. A ¶¶ 4-6. Pursuant to the Reverse Mortgage, Mrs. Boster was required to pay the taxes and insurance on the home to avoid defaulting on the Loan. Defs.' Mot. Summ. J. at Ex. E ¶¶ 4, 6. Mrs. Boster immediately defaulted on these obligations. Id. at Ex. E ¶ 7.

As a result of Mrs. Boster's failure to pay taxes and insurance on the property, Live Well fulfilled these payment obligations on her behalf in order to "protect its collateral." Id. at Ex. E ¶ 8. Those payments by Live Well began in October 2014 and ended in June 2017; however, the defendants claim that even after Live Well transferred the Reverse Mortgage to TIAA FSB d/b/a EverBank ("Everbank") on March 15, 2017, Live Well retained servicing rights and continued to advance funds for taxes and insurance on the home into 2018. Defs.' Mot. Summ. J. at Ex. E ¶ 16. After this transfer, defendant Live Well became merely a servicer of the Loan and defendant Celink became the sub-servicer. The defendants currently hold these roles with respect to the reverse mortgage.

On June 2, 2016, Celink sent Mrs. Boster a letter to inform her that Live Well advanced funds on June 1, 2016 to pay for delinquent taxes and/or insurance on the Loan. Defs.' Mot. Summ. J. at Ex. A ¶ 4; Ex. E ¶ 11; Ex. J. Celink further indicated that the Loan was "now considered to be in 'Tax/Insurance Default' status" and accordingly, she was required to pay $410.00 in order to cure the default. Id. at Ex. A. Subsequently, Celink sent several more letters on Live Well's behalf regarding her delinquent tax/insurance, but she

failed to make the $410.00 payment during that time.  Defs.'s
Mot. Summ. J. 7, Ex. A ¶ 4; Ex. K.

In light of Mrs. Boster's continued failure to meet
her insurance and tax payment obligations, which constituted
default under the loan agreement, Seneca Trustees, Inc.
("Seneca"), began initiating foreclosure on her home and
notified Mr. Boster and his mother of this by letter dated
October 19, 2016.  Id. at Ex. A ¶ 4; Ex. L.  On or around
November 10, 2016, Celink received a check in the amount of
$410.00 for the outstanding taxes/insurance payment, but there
was also $151.36 due for additional taxes and insurance that
Celink did not receive at that time.  Id. at Ex. A ¶ 8.  On
November 16, 2016, Samuel I. White, P.C., attorney for Celink,
sent a letter addressed to Mrs. Boster that she had breached the
terms of the Note by failing "to pay the installments
hereinafter stated."  Id. at Ex. A ¶ 4; Ex. M.  The installments
totaled $66,590.23 and included: an unpaid principal balance of
$54,476.16; accrued interest in the amount of $7,752.94;
mortgage insurance ("MIP") in the amount of $4,209.77; and taxes
in the amount of $151.36.  Id.  Pursuant to the letter, she was
given 30 days to cure the breach.  Id.

Shortly after Mrs. Boster passed away on November 25,
2016, Celink received on December 8, 2016 a check in the amount

of $151.36 for the outstanding taxes and insurance. Defs.' Mot. Summ. J. 7, Ex. A ¶ 9. Because Mrs. Boster died, the $156.36 and $410.00 payments were both returned to the sender. Defs.'sMot. Summ. J. 8, Ex. A ¶ 10. In light of his mother's death, Celink called Mr. Boster that same day and "advised him of five options with no recourse: (1) sell the Property; (2) refinance the Property; (3) short sale of the Property; (4) deed-in-lieu of foreclosure; or (5) foreclosure." Defs.' Mot. Summ. J. 8, Ex. A ¶ 11.

On December 27, 2016, Seneca sent notice to Mrs. Boster and her son, informing them that the Loan would be accelerated, and the property would be sold pursuant to the Deed of Trust. Defs.' Mot. Summ. J. at Ex. A ¶ 4; Ex. N; Pl.'s Mot. Summ. J. 2-3. Mr. Boster sought counsel to avoid eviction. Pl.'s Mot. Summ. J. 3. On February 27, 2017, Mr. Boster sent Proficio, Live Well, and Seneca Trustees, Inc., a letter indicating that he was rescinding the Loan and security interest pursuant to 15 U.S.C. § 1635. Pl.'s Mot. Summ. J. at Ex. 3. He claims that "[n]o action was taken within the 20 days allowed after receipt of that notice to release the lien on plaintiff's home or to seek a court order to alter the statutory revision process." Pl.'s Mot. Summ. J. 3.

As noted, on March 15, 2017, Live Well transferred the
Reverse Mortgage, including the Deed of Trust, to EverBank.
Defs.' Mot. Summ. J. 8, Ex. E ¶ 13; Pl.'s Mot. Summ. J. 3.  By
letter dated March 16, 2017, addressed to Mrs. Boster, notice of
the transfer was given by Live Well.  Ex. E ¶¶ 14, 15; Ex. O.

On July 3, 2017, Mr. Boster brought this action in the
Circuit Court of Kanawha County, West Virginia.  With the
consent of Celink, Live Well timely removed the case to this
court, invoking diversity jurisdiction pursuant to 28 U.S.C. §
1332.  Notice of Removal ¶¶ 6, 11.  Plaintiff's complaint
asserts two counts against the defendants.

First, Mr. Boster asks in Count I that the court
"declare defendants' claimed lien void and unenforceable, and to
enter a preliminary and a permanent injunction barring
defendants from any action to enforce or assign it."  Compl. ¶
59.  Mr. Boster asserts that the lien is unenforceable because
the Loan violates the West Virginia Residential Mortgage Lender,
Broker, and Servicer Act ("RMLBSA"), W. Va. Code § 31-17-1, et
seq., and because the reverse mortgage has been rescinded under
the Truth in Lending Act, ("TILA"), see 15 U.S.C. § 1635.

It is noted that the court, by ordered entered on
defendants' motion to dismiss on March 30, 2018, dismissed two
other grounds raised by plaintiff for Count I relief, consisting

of the West Virginia Reverse Mortgage Enabling Act ("Reverse Mortgage Act"), W. Va. Code § 47-24-1, et seq., and the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-2-104(a). See Id. at ¶¶ 47-49, 53-55.

Second, he asserts in Count II that defendants engaged in illegal debt collection acts in violation of provisions of the WVCCPA, W. Va. Code §§ 46A-2-127, 46A-2-128. Id. ¶¶ 66-67.

Plaintiff in his motion for summary judgment seeks judgment as a matter of law only on Count I. Defendants move for summary judgment only as to the RMBLSA claim under Count I, and as to all of the Count II debt collection claim.

## II. Legal Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing - "that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

### III. Discussion

**A. Count I**

**1. RMBLSA**

The defendants vigorously contend that the plaintiff has no standing to maintain this action because he is not a borrower.  The plaintiff responds by contending that RMBLSA, § 31-17-17 et. seq., authorizes a suit for willful violations even

though he is not a borrower. In the alternative, he claims that, inasmuch as he signed the Deed of Trust in his personal capacity, there exists a "jury question as to whether he is or is not a 'borrower.'"

Under RMBLSA, a court may cancel "any primary or subordinate mortgage loan . . . made in willful violations of the provisions of this article." W. Va. Code § 31-17-17(a). "Any agreement whereby the borrower waives the benefits of this article shall be deemed to be against public policy and void." Id. § (b). And, "[a]ny residential mortgage loan transaction in violation of this article shall be subject to an action, which may be brought in a circuit court having jurisdiction, by the borrower seeking damages, reasonable attorneys fees and costs." Id. § (c).

The plaintiff's assessment of 17(a) of the Act is misplaced. It does not allow for virtually anyone to maintain an action under this provision, but rather those who are vested with a cause of action thereunder. The mere fact that "borrower" is used in subsections (b) and (c), whereas not in (a), is of no moment. As similarly resolved in Consolo v. Bank of America and Williams v. Nationstar Mortgage, LLC, signing the Deed of Trust in his personal capacity as "RemainderMan" does not create a question of material fact as to whether Mr.

Boster was a "borrower" on the Reverse Mortgage.  See Consolo v. Bank of America, 2017 WL 1739171, at *1 (D. Mass. 2017); Williams v. Nationstar Mortgage, LLC, 2015 WL 6407493, at *1, *3 (Pa. Com. Pl. 2015).

Accordingly, the plaintiff is not a borrower and thus lacked standing to bring a cause of action under RMBLSA.

2. Rescission

The plaintiff moves for judgment as a matter of law on his claim made pursuant to the Truth in Lending Act ("TILA"). First, the defendants argue that plaintiff failed to assert a TILA claim in his complaint and therefore cannot move for summary judgment thereon.  Although it is true that "the complaint must contain sufficient facts to state a claim that is plausible on its face it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests."  Wright v. North Carolina, 787 F.3d 256, 263 (4th Cir. 2015).  Thus, "a complaint is to be construed liberally so as to do substantial justice."  Id.

In his complaint, Mr. Boster did not assert TILA rescission as a separate count.  He did, however, contend the following just prior to and within Count I:

50.  Thereafter, on February 27, 2017, plaintiff also served Proficio and LWF [Live Well] with notice

rescinding the March 20, 2014 loan in accordance with law.

51. That notice was legally effective upon that date to render the lien defendants' claim upon plaintiff's fee simple remainder interest in his home void and unenforceable.

52. Consequently, the March 20, 2014 reverse mortgage loan and the Deeds of Trust securing it are lawfully void and unenforceable by operation of law, including pursuant to W. Va. Code § 31-17-17.

. . .

55. As a result, plaintiff may not be held liable for payment of his mother's reverse mortgage through the sale of his home.

Count I – DECLARATORY JUDGMENT AND INJUNCTION

56. Defendants claim a first lien encumbering plaintiff's fee simple ownership interest in his home pursuant to the March 20, 2014 Deeds of Trust.

57. While that lien is void and unenforceable as a matter of law, defendants have not released that lien. It continues of record and thereby falsely, illegally, and unconscionably subjects plaintiff's home to foreclosure and sale for the debt of another.

58. That lien constitutes a cloud on plaintiff's title for which plaintiff has no adequate remedy at law.

59. Plaintiff therefore asks the Court to declare defendants' claimed lien void and unenforceable . . .

. . .

Compl. ¶ 50-52, 55-59.  In these allegations, plaintiff

references the letter sent to the defendants, in which he sought

to rescind the Loan pursuant to TILA, and claims that, as a

result, he is not liable for payment.  <u>See</u> Pl.'s Mot. Summ. J.

at Ex. 3.  Paragraphs 50, 51, 52, and 55 can thus be read into Count I as a claim asserted under TILA, and the court will consider it on the merits.

Mr. Boster would not ordinarily be considered a "consumer" with a statutory right to rescind because he is not a borrower.  However, Regulation Z defines "consumer" as the following:

> Consumer means a cardholder or natural person to whom consumer credit is offered or extended. However, for purposes of rescission under §§ 1026.15 and 1026.23, the term also includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest. For purposes of §§ 1026.20(c) through (e), 1026.36(c), 1026.39, and 1026.41, the term includes a confirmed successor in interest.

12 C.F.R. § 1026.2(a)(11).  Mr. Boster claims the home in question has "been his personal residence . . . at all times relevant to this claim."  Compl. ¶ 8.  The defendants acknowledge that he is "continuing to live in the property without paying monthly principal and interest payments."  Defs.' Mot. Summ. J. at 1-2.

Because the Loan is secured by Mr. Boster's principal dwelling and he has a remainder interest in the home, Mr. Boster is a consumer for purposes of TILA rescission.  See Compl. ¶ 8, 23-25; Defs.' Mot. Summ. J. 1; Defs.' Resp. in Opp. at Exs. A, B.  Thus, he has standing to assert TILA rescission.

TILA gives borrowers the right to rescind covered loan transactions "until midnight of the third business day following the consummation of the transaction or the delivery of the [required] information and rescission forms . . . together with a statement containing the material disclosures . . . whichever is later," but not longer than three years following the closing or consummation.  15 U.S.C. § 1635(a),(f).  The borrower must provide written notice of the rescission, after which the creditor has twenty days to "return any money or property . . . and shall take any action necessary to reflect the termination of the security interest."  12 C.F.R. § 1026.23(a), (d).  Once the creditor satisfies its obligations, the borrower must either tender any money or property received from the creditor or its reasonable value.  Id. at § 1026.23(d)(3).  The procedures for the return of money or property by both parties "may be modified by court order."  Id. at § 1026.23(d)(4).

More specifically, as part of the material disclosure delivery requirement, Regulation Z mandates that creditors deliver the information that must be provided to satisfy the requirements in § 1026.6 with respect to "the method of determining the finance charge and the balance upon which a finance charge will be imposed, the annual percentage rate, the amount or method of determining the amount of any membership or

participation fee that may be imposed as part of the plan, and the payment information described in § 1026.40(d)(5)(i) and (ii) that is required under § 1026.6(e)(2)." Id. Regulation Z further requires delivery of "two copies of the notice of the right to rescind to each consumer entitled to rescind," and must "clearly and conspicuously" disclose the retention or acquisition of a security interest in the consumer's principal dwelling, the consumer's right to rescind the transaction, how to exercise that right, the effects of rescission, and the date the rescission period expires. Id. at § 1026.15(b).

Although the plaintiff states in his briefing that there is no proof that he received two copies of notice and the material disclosures, the reality is that plaintiff has provided no evidence that he has not received them. The defendants, quite contrarily, have presented documentation with supporting testimonial evidence from the declaration of Philip Gwaltney, showing that Mr. Boster specifically acknowledged receipt of the material disclosures and two copies of notice of the right to rescind, marked as received on March 20, 2014, the day of the closing of the transaction. Defs.' Resp. in Opp. at Ex. H ¶ 16-18; Ex. A-C. TILA provides that "written acknowledgment of receipt of any disclosures required under this subchapter . . . create[s] a rebuttable presumption of delivery thereof." 15

U.S.C. § 1635(c). Plaintiff has failed to rebut that presumption with any evidence, testimonial or otherwise.

Accordingly, the plaintiff has failed to demonstrate that no genuine issue of material fact exists as to whether he received proper notice and the necessary disclosures required under TILA. And so, there remains a triable issue of whether plaintiff's attempt to rescind the loan was valid, inasmuch as his rescission letter was clearly outside of the normal three-day time limitation, but within the three year period entitled to those consumers who have not received the required documentation. Therefore, summary judgment must be denied on this claim.

B. Count II

The defendants similarly attack Count II of Mr. Boster's complaint on standing grounds, and claim he is not a consumer entitled to a private right of action under the WVCCPA. Count II alleges that defendants violated the WVCCPA because, "[i]n attempting to collect the claim, defendants made false, misleading, and deceptive representations in violation of W. Va. Code § 46A-2-127," and "used unfair and unconscionable means in violation of W. Va. Code § 46A-2-128." Compl. ¶¶ 66-67. Mr. Boster requests that this court "quiet title to his home . . . and to award him all relief to which he may be entitled in law

or equity, including a reasonable attorney fee and the costs of this litigation." Id. at 10. He asserts that he is entitled to this relief because "[t]he reverse mortgage loan is a 'claim' as defined by and subject to W, Va. Code § 46A-2-122 et seq.," "plaintiff is a 'consumer' as defined within and protected by W. Va. Code § 46A-2-122 et seq.," and defendants were "at all times debt collectors subject to and governed by W. Va. Code § 46A-2-122 et seq." Id. at ¶¶ 62-63, 65.

The applicable definition of a "consumer" for this purpose is "any natural person obligated or allegedly obligated to pay any debt." W. Va. Code § 46A-2-122. As this court previously determined on the motion to dismiss, Mr. Boster is not obligated to pay a debt because he signed the Note only as his mother's power of attorney, and is not obligated to pay a debt merely because he could pay such debt in order to retain the property. See McNeely v. Wells Fargo Bank, N.A., 115 F. Supp. 3d 779, 785 (S.D.W. Va. 2015) (holding that Mr. McNeely was not a "consumer" pursuant to W. Va. Code § 46A-2-122(a) because "Mr. McNeely did not sign and was not a party to either of the loans at issue, which were all signed by Mrs. McNeely"); Bishop v. Quicken Loans, Inc., 2011 U.S. Dist. LEXIS 37647, at *32 (S.D. W. Va. 2011) (holding that plaintiff who executed a

deed of trust, but not the underlying note, is not a "consumer" under the WVCCPA).

And so, the sole question that remains in this respect is whether Mr. Boster was "allegedly obligated" to pay a debt. See W. Va. Code § 46A-2-122. "Courts consider a person 'allegedly obligated' to pay a debt when the creditor has 'represented to [him] that [he] is personally liable on the debt." McNeely 115 F. Supp. 3d at 784 (S.D. W. Va. 2015) (quoting Fabian v. Home Loan Ctr., Inc., 2014 U.S. Dist. LEXIS 56954, *20 (N.D. W. Va. 2014). "The term 'alleged obligation' extends the reach of the WVCCPA to certain collection activities conducted without regard to whether the debt is actually owed." McGuire v. Jim Walter Homes, LLC, 2014 U.S. Dist. LEXIS 146198, *19 (S.D. W. Va. 2014); see also Croye v. GreenPoint Mortg. Funding, Inc., 740 F. Supp. 2d 788, 787 (S.D. W. Va. 2010) ("While it is unlikely that Mr. Croye was ever legally obligated to pay the mortgage loans . . . . repeated efforts to collect payment from him suggest the existence of an alleged obligation of Mr. Croye to pay the loans.").

The plaintiff claims there is "sufficient evidence in the record to allow a reasonable jury to conclude that by the documents Mr. Boster signed in his personal capacity[,] he contractually 'incurred debt,' became obligated or allegedly

obligated to pay any debt, and/or assumed liability for the mortgage debt." Pl.'s Resp. to Defs.' Mot. Summ. J. 12. However, the evidence supports the contrary. For example, monthly mortgage statements were addressed to Mrs. Boster or her estate. Defs.' Mot. Summ. J. 18. In addition, the November 16, 2016 letter from Samuel L. White was addressed solely to Mrs. Boster, who was still alive at the time the letter was sent. Id. at Ex. M. The December 27, 2017 letter from Seneca, though addressed to both Mrs. Boster and Mr. Boster, never indicated that the plaintiff was required to pay the balance of the Loan. Id. at Ex. N. Instead, it merely provided notice that the Loan was due and payable and that the property would be sold the following year. Id.

The court believes that the monthly mortgage statements and letters addressed specifically to Mrs. Boster demonstrate that the defendants' collection practices made clear that Mrs. Boster was the sole obligor. Further, the plaintiff attended counseling and signed the Certificate, which defined the definition of "borrowers" as "those parties who have signed the Note and Mortgage or Deed of Trust." He, of course, did not sign the Note in his individual capacity. Moreover, Mr. Boster signed several documents which indicated that he was a non-borrowing resident of the property.

In conclusion, the record is devoid of any indication that the defendants' collection practices suggested to the plaintiff that he was allegedly obligated for his mother's debt, and the plaintiff has failed to point to any facts to suggest otherwise. See Gilbert Imported Hardwoods, Inc. v. Holland, 176 F. Supp. 2d 569, 578 (S.D. W. Va. 2001) ("If the movant satisfies [its] burden" "of showing . . . that there is an absence of evidence to support the nonmoving party's case[,]" "then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial." (quotations omitted)). Accordingly, the plaintiff lacked standing to file suit under the WVCCPA, and the defendants are entitled to summary judgment on this count.

### III. Conclusion

For the foregoing reasons, it is ORDERED that:

1. The defendants' motion for summary judgment be, and hereby is, granted as to RMBLSA in Count I and granted as to the entirety of Count II.

2. The plaintiff's motion for summary judgment be, and hereby is, denied.

3. Count I be, and hereby is, dismissed, except as it relates to the Truth in Lending Act claim.

4. Count II be, and hereby is, dismissed.

    The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties.

                    ENTER: March 25, 2019


    _____
    John T. Copenhaver, Jr.
    Senior United States District Judge