UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WILLIAM W. BOSTER, JR.,

      Plaintiff,

v.                              Civil Action No. 2:17-cv-03857

TIAA, FSB F/K/A EVERBANK,

      Defendant.

ORDER

      Pending are plaintiff's Renewed Motion for Partial Summary Judgment on Recission Timeliness, ECF No. 157, and defendant's Motion for Summary Judgment, ECF No. 160, each filed on September 25, 2023.  The court notes that this case was stayed by virtue of the involuntary bankruptcy of a former defendant, Live Well Financial, Inc., from June 19, 2019, to August 7, 2023, by this court's order.  See Order, ECF No. 143 (filed June 19, 2019) (staying this action considering the notice of bankruptcy); Order, ECF No. 150 (filed Aug. 7, 2023) (lifting the stay).

I.    Factual Background

      This case arises out of a dispute between plaintiff William W. Boster ("Mr. Boster"), who took out a reverse

mortgage on behalf of his mother as her attorney-in-fact under a durable power of attorney, and TIAA, FSB f/k/a Everbank ("TIAA"), the intervenor defendant to whom the original loan servicer, Live Well Financial, Inc. ("Live Well"), assigned the relevant deed of trust. Mr. Boster seeks to nullify the loan on the alleged grounds that Live Well did not abide by federal credit disclosure requirements at its closing.

On June 26, 2007, Mr. Boster's mother, Wanda Jean Boster, conveyed to plaintiff a remainder interest in her Nitro, West Virginia, home, in which she reserved a life estate for herself. Affidavit of Kevin Paperd,[1] Def. Mot. Summ. J., Ex. 1 at ¶ 4 ("Paperd Aff."). Wanda Jean Boster passed away on November 25, 2016. Id. Mr. Boster now owns and currently resides in the Nitro, West Virginia, home. Joint Stipulation at ¶ 6, ECF No. 159.

---

[1] At the time of his affidavit, Kevin Paperd was employed by Compulink Corporation, the sub-servicer hired by Live Well to service the reverse mortgage at issue in this matter. Paperd Aff. at ¶¶ 1, 2. The Paperd Affidavit was previously filed in support of the motion of former defendants Live Well and Celink for summary judgment in this matter filed on May 21, 2018. ECF No. 59. That affidavit authenticated several documents attached thereto, including (1) the deed from Mrs. Boster to plaintiff, (2) Mrs. Boster's Power of Attorney granted to Plaintiff, (3) the Certificate of HECM Counseling signed by plaintiff as attorney-in-fact for Mrs. Boster, (4) the Home Equity Conversion Mortgage Loan Agreement signed by plaintiff as attorney-in-fact for Mrs. Boster, (5) certain disclosures given in connection with the Loan origination; (6) certain correspondence from Live Well to Mrs. Boster, (7) documents related to the commencement of foreclosure proceedings on the Property, all of which were submitted as exhibits to Live Well and Celink's motion for summary judgment. ECF No. 59.

In July 2007, Wanda Jean Boster gave Mr. Boster power of attorney over "any mortgages, loans, deeds of trust on any of [her] real property or interests." Paperd Aff. at ¶ 4 (authenticating "Durable Power of Attorney with Committee Nomination," ECF No. 59-1, at 8). In March 2014, acting as his mother's attorney-in-fact, Mr. Boster sought a reverse mortgage loan on behalf of his mother through the Home Equity Conversion Mortgage ("HECM") program. Pl. Mot. Summ. J. at 1, ECF No. 158. Plaintiff attended the counseling required to obtain the reverse mortgage and, on behalf of his mother and himself, signed the Certificate of HECM Counseling, which states that a HECM reverse mortgage would be "due and payable when no remaining borrower lives in the mortgaged property, or when any other covenants of the mortgage have been violated." Certificate of HECM Counseling, Live Well Mot. Summ. J. Ex. D, ECF No. 59-1 (filed May 21, 2018). The Boster reverse mortgage was originated by Live Well through its loan correspondent, Proficio Mortgage Ventures, LLC ("Proficio"). See Deposition of William Boster at 61:1-4, ECF No. 164-1 ("Boster Depo."); HECM Federal Truth-In-Lending Closing Disclosure Statement, ECF No. 164-1, at 28.

On March 20, 2014, Mr. Boster, acting solely as attorney-in-fact for his mother, executed two promissory notes to obtain a reverse mortgage under the HECM program. Affidavit

of G. Philip Gwaltney[2] at ¶ 5, Def. Mot. Summ. J., Ex. 2, ECF No. 160-2 ("Gwaltney Aff.").  One was with Proficio and the other was with the Secretary of Housing and Urban Development (collectively, the "Note"), as is required in such a transaction in the HECM program.  Id.  Mr. Boster, again acting solely as attorney-in-fact for his mother, signed a "Home Equity Conversion Mortgage Loan Agreement – Open End" (hereinafter "Loan Agreement") as "Wanda Jean Boster by William Wayne Boster, as Attorney-in-Fact."  Id. at ¶ 4; see Loan Agreement, ECF No. 59-1 at 25-39.  Mr. Boster thus signed neither the Note nor the Loan Agreement in his personal capacity.  Mem. Op. and Order, 2019, at 3, ECF No. 123 (filed Mar. 25, 2019).

Because Mr. Boster held a remainder interest in the property, he also signed two deeds of trust (collectively, the "Deed of Trust"), which pledged the property as collateral for the Note.[3]  See Gwaltney Aff. at ¶ 4 (authenticating the Deed of Trust at ECF No. 59-1, Ex. H, at 40-63).  The Deed of Trust required payment of "all property charges consisting of

─────────────────────

[2] At the time of his affidavit, G. Philip Gwaltney was a Vice President at Live Well who had personal knowledge of the events and documents relevant to this matter.  Gwaltney Aff., at ¶¶ 1, 2.  The Gwaltney Affidavit was previously filed in support of Live Well and Celink's motion for summary judgment in this matter filed on May 21, 2018.  ECF No. 59.  That declaration authenticated the note signed for the reverse mortgage, which also was filed therewith. ECF No. 59.

[3] The Note, Deed of Trust, and Loan Agreement will be collectively referred to herein as the "Reverse Mortgage."

taxes . . . and hazard insurance premiums" and stated that the lender could require payment in full if a "Borrower dies and the Property is not the principal residence of at least one surviving Borrower." Id. Mr. Boster additionally signed four documents both in his individual capacity and as attorney-in-fact for his mother: (1) Non-Borrowing Resident Disclosure; (2) Important Notice to Non-Borrowing Spouse or Resident; (3) Ownership Interest Certification; (4) Notice to Non-Borrowing Spouse or Resident. Paperd Aff. at ¶ 4, Ex. I, ECF No. 59-1 at 66-69.

At closing, Proficio provided Mr. Boster a document that purported to satisfy the lender's disclosure requirements under TILA. See Home Equity Conversion Mortgage Federal Truth-In-Lending Loan Closing Disclosure Statement, ECF No. 157-4; Gwaltney Aff. at ¶ 16, 17, ECF No. 160-3 (authenticating the document). Mr. Boster signed this singular document both in his capacity as his mother's attorney-in-fact and in his individual capacity as the remainderman on the property. Proficio also provided Mr. Boster two documents entitled "Home Equity Conversion Mortgage Notice of Right to Cancel." See Home Equity Conversion Mortgage Notice of Right to Cancel, ECF No. 157-5; Gwaltney Aff. at ¶ 16, 17, ECF No. 160-3 (authenticating the documents). Each document was labeled as attendant to the

Reverse Mortgage, but the documents did not explicitly articulate to whom each was addressed.  <u>See</u> Home Equity Conversion Mortgage Federal Truth-In-Lending Loan Closing Disclosure Statement, ECF No. 157-4. (using the pronouns "you" and "your" without clear definition).

Each document had the following acknowledgment: "I hereby acknowledge receipt of two completed copies of the Home Equity Conversion Mortgage Notice of Right to Cancel and a copy of the Home Equity Conversion Mortgage Federal Truth-in-Lending Loan Closing Disclosure Statement."  <u>Id.</u>  One document was signed by Mr. Boster as "Wanda Jean Boster by William Wayne Boster, as Attorney-in-Fact," and the other was signed by Mr. Boster as "William Wayne Boster, as RemainderMan."  <u>Id.</u> Plaintiff testified that, after closing, the notary left him with only one copy of each document he signed at closing. Boster Depo. at 65:24-68:13, ECF No. 164-1.  Neither TIAA nor prior defendants have proffered evidence that Mr. Boster received more than one copy of any closing document, other than the acknowledgments described above.

In connection with the closing of the Reverse Mortgage, $33,434.45 was paid to Huntington National Bank to satisfy Mrs. Boster's outstanding conventional mortgage. <u>See</u> Gwatlney Aff. at ¶ 10, ECF No. 160-2.  Though the Reverse

Mortgage obligated Mrs. Boster to pay for taxes and insurance on the property, Mrs. Boster failed to do so "[f]rom the inception of the Reverse Mortgage," constituting default.  See id. at 4-7. On July 6, 2015, Mrs. Boster made one payment "on the loan at issue" in the amount of $668.82, but there is no evidence that any further payments were made.  Affidavit of Adam Rusk,[4] at ¶ 14, ECF No. 160-4 ("Rusk Aff.").  Live Well acquired the Reverse Mortgage from Proficio on April 2, 2014, and engaged Compu-Link Corporation d/b/a Celink as the sub-servicer of the Reverse Mortgage.  See Rusk Aff., at ¶ 4, ECF No. 160-4; Gwaltney Aff. at ¶ 3, ECF No. 160-2.  Thereafter, despite having no obligation to do so, Celink made several disbursements to pay for Mrs. Boster's property tax and insurance obligations, paying a total of $4,342.89 and $4,332.38, respectively.  Gwaltney Aff. ¶¶ 9, 11; Rusk Aff. ¶ 12.  Neither party has conclusively stated whether these figures reflect all such payments made by Mrs. Boster's creditor or the extent to which such payments satisfied all tax and insurance obligations required by the Reverse Mortgage.

On February 27, 2017, three months after his mother's death, Mr. Boster sent a letter to Proficio, Live Well, and the

---

[4] Adam Rusk is a Vice President at Celink with personal knowledge of the facts set forth in his affidavit.  Rusk Aff., at ¶¶ 1, 2.

Secretary of Housing and Urban Development, purporting to
"rescind the reverse mortgage loan transaction of March 20,
2014, pursuant to the extended right of rescission afforded by
the federal Truth in Lending Act, 15 U.S.C. § 1635, and
implementing regulations at 12 C.F.R. § 1026.15 and/or 12 C.F.R.
§ 1026.23."  Recission Notice, ECF No. 157-7.

Since sending the Recission Notice, Mr. Boster has
never offered to tender to Live Well or TIAA, Live Well's
successor in interest, any money or property received by Mrs.
Boster from her creditor in connection with the Reverse
Mortgage.  See generally Compl., ECF No. 1-1; Pl. Reply, at 1-2,
ECF No. 164 (arguing that plaintiff need not offer tender
because TIAA has not yet removed its security interest on the
property); Boster Depo., at 139:4-12, 139:16-140:5; Joint
Stipulation, at ¶ 5-6 (Plaintiff "does not have sufficient funds
in a bank account that he could use to tender the amount
[d]efendant claims [p]laintiff is obligated to tender" and "does
not own any assets that would be valued" at the amount defendant
argues plaintiff would have to tender).  Despite his admitted
inability to tender the loan proceeds, plaintiff points out that
he "stipulated that inability is not total but only other than
through the sale or mortgaging of his home."  Pl. Reply, ECF No.
164 (filed Oct. 16, 2023).  "If the Court should rule that

[p]laintiff must pay a tender amount solely from cash assets, [p]laintiff has none and does not foresee receiving any in the future sufficient to pay tender. Plaintiff lacks any ability to pay any tender amount from cash assets."  Joint Stipulation, at ¶ 11, ECF No. 159 (filed Sept. 25, 2023).

## II.  Procedural Background

On July 3, 2017, plaintiff filed in state court a two-count complaint against Live Well and Celink, seeking a declaratory judgment that the Reverse Mortgage has been rescinded, an injunction barring defendants from taking action to enforce it, and remedy under state law.  See Compl. at ECF No. 1-1.  In August 2017, defendant Live Well properly removed the action.  See Notice of Removal, ECF No. 1.  Defendants then separately moved to dismiss the complaint, which the court granted in part and denied in part.  See Boster v. Live Well Fin., Inc., 2018 WL 1582725 (S.D.W. Va. Mar. 30, 2018) (ECF No. 38).

Thereafter, all parties moved for summary judgment in their favor.  On March 25, 2019, the court denied plaintiff's motion for summary judgment on the issue of whether plaintiff's attempt to rescind the Reverse Mortgage under TILA was valid and granted summary judgment in favor of defendants on all other claims.  See Boster v. Live Well Fin., Inc., 2019 WL 1344726

9

(S.D.W. Va. Mar. 25, 2019) (ECF No. 123).  The court then directed the parties to brief the issue of whether, pursuant to TILA and regulations promulgated thereunder, plaintiff had properly rescinded the Reverse Mortgage and thereby voided Live Well's security interest in the property.  Order, ECF No. 134 (filed May 8, 2019).  On June 17, 2019, Live Well filed a Suggestion of Bankruptcy, notifying the court that Live Well was the subject of an involuntary bankruptcy petition filed on June 10, 2019.  ECF No. 141.  On June 18, 2019, pursuant to its May 25, 2019, order ruling on the parties' motion for summary judgment, the court dismissed Celink.  ECF No. 142.  Because of the Suggestion of Bankruptcy filed by Live Well — now the sole remaining defendant — the court entered an order staying this action.  ECF No. 143.

On May 24, 2023, TIAA filed "TIAA, FSB's Motion to Intervene, Substitute Party, Lift Stay, and Reset Deadlines," notifying the court that it had been assigned the Deed of Trust of the Reverse Mortgage.  ECF No. 144.  The court then filed the August 7, 2023, order lifting the stay, establishing a schedule for this matter, and granting TIAA's motions to intervene pursuant to Federal Rule of Civil Procedure 24(a) and to substitute TIAA in the place of Live Well pursuant to Rule 25(c).  ECF No. 150.

The parties each filed motions for summary judgment on plaintiff's TILA rescission claim, the sole remaining issue in this matter.[5]  See ECF No. 157 (plaintiff's), 160 (defendant's). Plaintiff seeks summary judgment "holding as a matter of law that his February 17, 2017 notice of rescission was timely, and that the security interest in Plaintiff's home was automatically void upon the giving of that notice."  Pl. Resp. at 19, ECF No. 162.  Defendant seeks summary judgment in its favor.  Def. Mot. Summ. J., at 19, ECF No. 161.

### III. Legal Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[5] Plaintiff understood the court's May 8, 2019, order as permitting dispositive motions only on the question of whether plaintiff's notice was timely.  See Mot. to Exceed Page Limit, ECF No. 154.  After defendant briefed both timeliness and tender, plaintiff did so, too.  See Def. Mot. Summ. J., ECF No. 160; Pl. Resp., at 1, ECF No. 162.  Questions of timeliness and tender are thus fully briefed, and the court considers both herein.

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable factfinder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing - "that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

IV.  Analysis

a.  Legal Framework

The Truth in Lending Act, 15 U.S.C. ¶ 1601(a), et seq., (hereinafter "TILA") was enacted "to help consumers avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing."  Lavis v. Reverse Mortg. Sols., Inc., 40 F.4th 181, 183 (4th Cir. 2022).  The statute accordingly requires lenders to make specific

disclosures to consumer borrowers, including certain disclosures about the borrower's right to rescind the transaction. 15 U.S.C. § 1635(a). Further, Regulation Z, promulgated under TILA, requires that the lender "deliver two copies of the notice of the right to rescind to each consumer entitled to rescind" and "clearly and conspicuously" disclose specific information. 12 C.F.R. § 1026.15(b); see 15 U.S.C. § 1635(a).

The statute further "provides that, if the borrower gives the lender a security interest in the borrower's home, the borrower may rescind, for any reason, within three business days from either the closing or the delivery of forms containing "'material disclosures.'" Lavis, 40 F.4th at 183 (quoting 15 U.S.C. § 1635(a)). However, if a lender fails to provide to the consumer the necessary disclosures, including two copies of that regarding the consumer's right to rescind, the time to rescind extends to "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." § 1635(f).

As relevant to this action, TILA specifies that recission proceeds as follows:

> When an obligor exercises his right to rescind under subsection (a) . . . any security interest given by the obligor . . . becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the

> creditor shall return to the obligor any money
> or property given as earnest money,
> downpayment, or otherwise, and shall take any
> action necessary or appropriate to reflect the
> termination of any security interest created
> under the transaction. If the creditor has
> delivered any property to the obligor, the
> obligor may retain possession of it. Upon the
> performance of the creditor's obligations
> under this section, the obligor shall tender
> the property to the creditor, except that if
> return of the property in kind would be
> impracticable or inequitable, the obligor
> shall tender its reasonable value.

§ 1635(b).   As will be fully developed below, TILA imposes a
requirement on the rescinding borrower who has given timely
notice of rescission that "[u]pon the performance of the
creditor's obligations under this section," the rescinding
borrower must "tender the property" given by the creditor
pursuant to the loan or "its reasonable value" to the lender.
Id.; see also Lavis, 40 F.4th at 181.   The statute thus
incorporates two requirements that must both be satisfied before
a court may effectuate rescission: timely notice and tender.

     The Fourth Circuit's recent decision in Lavis makes
abundantly clear that timely notice and tender are both required
of one who seeks to rescind for a court to effectuate rescission
under TILA.   40 F.4th, at 181.   In Lavis, the plaintiff had
obtained a reverse mortgage from a lender.   See Lavis, 40 F.4th
at 183-4.   Relying on the same statutes and regulations as the
plaintiff in the matter at hand, the Lavis plaintiff sent a

timely notice of recission to her lender.  See id. at 184.
However, she "had not tendered payment or presented evidence of
her ability to tender to [her lender] the loan proceeds." Id.
at 185.  After the jury returned a verdict in favor of the
lender defendant, the district court granted the plaintiff's
renewed motion for judgment as a matter of law, reasoning that
Jesinoski v. Countrywide Home Loans, Inc., 574 U.S. 259 (2015)
held that the mere notice of recission under TILA triggered a
lender's obligation to terminate a security interest
irrespective of a borrower's ability to tender loan proceeds and
that, because the lender had not satisfied that obligation, it
had forfeited its right to require the borrower to tender such
proceeds.[6]  See id.  The lender appealed, and the Fourth Circuit
reversed the district court.

In its opinion, the Fourth Circuit held, at bottom,
that a consumer's recission notice does not itself effectuate
recission and that "tender is a critical part of recission."
Id. at 187.  The Lavis court analyzed the text of TILA itself,
acknowledging that though § 1635(b) sets out "the procedure[]
for recission" such that notice precedes tender, such language
"is more focused on the timing of when tender occurs rather than

---

[6] As discussed below, Jesinoski's holding is far more limited and only bears
on whether a rescinding borrower must merely notify the lender of recission
or file suit to that effect.  See infra at 18-19.

whether it occurs at all." Id.  Noting that the statute specifically provides that "courts have flexibility to alter the provisions of § 1635(b) as needed to ensure that recission is equitable," the Fourth Circuit reaffirmed its previous holdings that "[t]he equitable goal of recission under TILA is to restore the parties to the status quo ante." Id. (citing Am. Mortg. Network, Inc. v. Shelton, 486 F.3d 815, 820 (4th Cir. 2007).  In furtherance of that equitable goal, the court held that tender is necessarily required for recission to be possible under § 1635(b). Id. at 187.

Fourth Circuit precedent is consistent with that conclusion.  This circuit has consistently held that borrowers seeking to rescind reverse mortgages pursuant to § 1635(b) must tender loan proceeds so as to avoid "depriv[ing] the lender of its legal due." Powers v. Sims & Levin, 542 F.2d 1216, 1222 (4th Cir. 1976).  The court found in Powers that "Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers." Id. at 1221; see Lavis, 40 F.4th at 188 ("courts should not enforce rescission in a way that deprives a lender of the amounts due to it under the pertinent loan").  In

Shelton, the court affirmed the lower court's conclusion that §
1635(b) does not require an unconditional release of a lender's
security interest, holding that the district court can "either
den[y] rescission or base[] the unwinding of the transaction on
the borrowers' reasonable tender of the loan proceeds.  486 F.3d
at 820.

          Further, in Gilbert v. Residential Funding, LLC, 678
F.3d 271 (4th Cir. 2012), the court distinguished between the
notice of rescission and completed rescission.  678 F.3d at 277
(articulating that courts "must not conflate the issue of
whether a borrower has exercised her right to rescind with the
issue of whether the rescission has, in fact, been completed and
the contract voided.").  The Gilbert court held that, though
unilateral notice of rescission was sufficient to indicate an
intent to exercise a right to rescind under § 1635(b), "the
creditor must acknowledge that the right of recission is
available and the parties must unwind the transaction amongst
themselves, or the borrower must file a lawsuit so that the
court may enforce the right to rescind" to complete rescission.
Id.  Consistently, the Fourth Circuit has held that the purpose
of recission is to ensure an equitable return to the status quo
ante, and tender is a critical piece of that equation: without

tender of the loan proceeds by the borrower, a court should not enforce rescission.  <u>Lavis</u> simply reiterates that principle.

In short, rescission under § 1635(b) can be stated thusly: though timely notice of recission is a necessary predicate to rescission, rescission is not complete until the borrower has both given such timely notice and has tendered the loan proceeds or reasonable value thereof pursuant to agreement between the parties or court order.

Accordingly, to determine whether Mr. Boster's Recission Notice was effective, the court must ascertain whether it was timely and, if so, whether an adequate tender has been made.

b.   Timeliness of Notice

TILA gives borrowers the right to rescind covered loan transactions "until midnight of the third business day following the consummation of the transaction or the delivery of the [required] information and rescission forms . . . together with a statement containing the material disclosures . . . whichever is later," but not longer than three years following the closing or consummation.  15 U.S.C. § 1635(a),(f).  The borrower must provide written notice of the rescission, after which the

creditor has twenty days to "return any money or property . . .
and shall take any action necessary to reflect the termination
of the security interest."  12 C.F.R. § 1026.23(a), (d).  Once
the creditor satisfies those obligations, the borrower must
either tender any money or property received from the creditor
or its reasonable value.  Id. at § 1026.23(d)(3).  The
procedures for the return of money or property by both parties
"may be modified by court order."  Id. at § 1026.23(d)(4).

       More specifically, as part of the material disclosure
delivery requirement, Regulation Z[7] mandates that creditors
deliver the information that must be provided to satisfy the
requirements in § 1026.6 with respect to "the method of
determining the finance charge and the balance upon which a
finance charge will be imposed, the annual percentage rate, the
amount or method of determining the amount of any membership or
participation fee that may be imposed as part of the plan, and
the payment information described in § 1026.40(d)(5)(i) and (ii)
that is required under § 1026.6(e)(2)."  Id.  Regulation Z
further requires delivery of "two copies of the notice of the
right to rescind to each consumer entitled to rescind," and must
"clearly and conspicuously" disclose the retention or

---

[7] 12 C.F.R. § 1026, et seq.

acquisition of a security interest in the consumer's principal
dwelling, the consumer's right to rescind the transaction, how
to exercise that right, the effects of rescission, and the date
the rescission period expires.  Id. at § 1026.15(b).

Plaintiff and defendant have both moved for summary
judgment in their favor on the question of whether plaintiff's
notice was timely.  See Pl. Mot. Summ. J., ECF No. 158; Def.
Mot. Summ. J., ECF No. 161, at 17-18.

In its March 25, 2019, order, the court considered
plaintiff's motion for summary judgment in which he contended
that he had not received the disclosures required by TILA and
thus that his notice of recission was timely.  See Boster v.
Live Well Fin., Inc., 2019 WL 1344726, at *4-6 (S.D.W. Va. Mar.
25, 2019) (ECF No. 123); 15 U.S.C. § 1635; 12 C.F.R. § 1026.6
(Regulation Z's disclosure requirements).  There, the court
found that "the plaintiff has failed to demonstrate that no
genuine issue of material fact exists as to whether he received
proper notice and the necessary disclosures required under
TILA."  Boster v. Live Well Fin., Inc., 2019 WL 1344726, at *6
(S.D.W. Va. Mar. 25, 2019) (ECF No. 123).  This decision is the
law of the case.  See TFWS, Inc. v. Franchot, 572 F.3d 186, 191
(4th Cir.2009) ("[W]hen a court decides upon a rule of law, that
decision should continue to govern the same issues in subsequent

stages in the same case."). There are three exceptions to the law-of-the-case rule: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Id. at 191. Plaintiff has not argued any exception applies, and the court sees no reason to disturb its prior ruling. Accordingly, plaintiff's motion for summary judgment as to timeliness must again be denied.

Then-defendants Live Well and Celink did not move for summary judgment on the timeliness issue. Here, however, defendant TIAA has so moved, arguing that it is entitled to summary judgment because there is no issue of material fact respecting whether Mr. Boster received the proper disclosures. See Def. Mot. Summ. J., at 17-18 (ECF No. 161).

There is a rebuttable presumption that plaintiff received the disclosures required by TILA and Regulation Z. See Order at 16-17, ECF No. 123 (filed Mar. 25, 2019) ("TILA provides that 'written acknowledgment of receipt of any disclosures required under this subchapter . . . create[s] a rebuttable presumption of delivery thereof.'") (citing 15 U.S.C. § 1635(C)). Further, defendant presented documentation with supporting testimonial evidence from the declaration of Philip

Gwaltney, showing that Mr. Boster specifically acknowledged receipt of the material disclosures and two copies of notice of the right to rescind, marked as received on March 20, 2014, the day of the closing of the transaction. <u>See</u> Supplemental Declaration of G. Philip Gwaltney, at ¶¶ 16-18, ECF No. 64-8 (originally attached to then-defendants' memorandum in opposition of plaintiff's 2019 motion for summary judgment).

In response, plaintiff points to his deposition testimony, wherein plaintiff claims that he only received one copy of the notice of the right to rescind. <u>See</u> Boster Depo. at 65:24-67:16, ECF No. 164-1. Though less thoroughly than defendant has done, plaintiff has "pointed to sufficient specific, admissible evidence to create an issue of fact with regard to the disclosures," which is "sufficient to overcome the presumption that they received the disclosures" as required by law. <u>Lenhart v. EverBank</u>, 2013 WL 5745602, *6 (S.D.W. Va. Oct. 23, 2013). As the <u>Lenhart</u> court recognized, in a TILA case, the mere testimony of the borrower is sufficient to "rebut the presumption that [he] received two copies of [the required notice]." <u>Id.</u> (citing <u>Cappuccio v. Prime Capital Funding LLC</u>, 649 F.3d 180, 189 (3rd Cir.2011) ("We have previously held that a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is

sufficient to defeat summary judgment . . . even if the affidavit is "self-serving" in the sense of supporting the affiant's own legal claim or interests.").  Defendant urges the court to not rely on Lenhart because, in that case, more than just deposition evidence rebutted the presumption of sufficient notice.  However, though more than just deposition evidence in plaintiff's favor existed, the Lenhart court rooted its denial of summary judgment as to timeliness on the mere weight of plaintiff's deposition testimony.  Lenhart, 2013 WL at *6.

Mr. Boster has proffered the same evidence in this matter.  Because he testified that he only received one copy of the notice that TILA required duplicates of, he "[has] sufficiently rebutted the presumption created by their signed acknowledgement forms, and [has] created a triable issue of fact" as to whether he received two copies of the right to cancel notice as required by law.  Id.

Inasmuch as TIAA, supported by the acknowledgment signed by Mr. Boster, disputes the timeliness of Mr. Boster's Recission Notice, there remains a triable issue of material fact as to whether it was timely under TILA, and both the plaintiff's renewed motion for partial summary judgment and the defendant's motion for summary judgment as to timeliness must be denied.

c.    Tender

As discussed above, Lavis holds that TILA establishes two requirements that must be satisfied for a court to effectuate rescission thereunder: timely notice and tender.  In this matter, plaintiff has indicated an inability to tender the proceeds of the Reverse Mortgage to TIAA.

However, plaintiff argues that such tender is unnecessary for the court to effectuate rescission.  Attempting to distinguish Lavis and the present case, plaintiff argues that the Fourth Circuit misinterprets Jesinoski and that it would be inequitable to require Mr. Boster to tender the proceeds of the Reverse Mortgage.

Plaintiff's first argument is that the Fourth Circuit has "muddle[d] questions about" the effect of a rescission notice "through using the word 'recission' imprecisely."  Pl. Resp. at 12, ECF No. 162.  Plaintiff asserts that "[i]mprecise language to the effect that recission cannot occur unless tender is made is not consistent with [TILA], Regulation Z, or [Jesinoski], all of which plainly state that under TILA, a transaction is rescinded upon the giving of simple notice."  Id. In support of this contention, plaintiff cites Williams v.

24

Homesake Mortg., Inc., 968 F.2d 1137 (11th Cir. 1992), which
asserted that "all that the consumer need do [to effectuate
recission under § 1635(b)] is notify the creditor of his intent
to rescind.  The agreement is then automatically rescinded and
the creditor must, ordinarily, tender first."  968 F.2d at 1140.

        To the contrary, not only did the Fourth Circuit in
Lavis expressly diverge from Williams, but it also made clear
that § 1635(b) merely sets out the order of operations of
rescission and that courts retain power to alter its provisions
to ensure equitable rescission.  40 F.4th at 187, 191 n.5.  In
so holding, Lavis expressly disagreed with the district court's
statements "'that rescission is affected [sic] at the time of
the notice' and that the borrower does not have to 'make tender
in order to complete that process or to effectuate rescission.'"
Id. at 185 (quoting the joint appendix).

        Further, Jesinoski is far more limited than plaintiff
argues.  There, the Supreme Court addressed the question of
whether timely notice requires that a recission notice be sent
or a lawsuit be filed within the statutory timeframe.  Jesinoski
v. Countrywide Home Loans, Inc., 574 U.S. 259, 260 (2015).  It
stands only for the proposition that a borrower who seeks to
rescind need only file a notice of rescission, rather than also
file suit, within the requisite time frame.  Id. at 264.

Plaintiff's argument is understandable because the Court in
Jesinoski states that "recission is effected when the borrower
notifies the [lender] of his intention to rescind." Id. at 262.
However, given the limited scope of that case, that language
focuses "only on the type of notice required," holding that mere
notice, not a lawsuit, is required to trigger the rescission
protocol outlined in § 1635(b). Lavis, 40 F.4th at 189-90.

    Plaintiff further argues that, unlike Lavis, the
plaintiff here is the son of the borrower, and the court's
refusal to effectuate rescission would inequitably punish the
plaintiff by enforcing against him the Reverse Mortgage that his
mother took out. For this contention, plaintiff relies heavily
on Eveland v. Star Bank, 976 F.Supp. 721 (S.D. Ohio 1997).
There, the court denied summary judgment in favor of the lender
where, even though the plaintiff could not tender loan proceeds,
the "[p]laintiff was not an obligor in the loan transaction
giving rise to the mortgage," the lender "did not deliver money
or property to the [p]laintiff," and the only benefits the
plaintiff received from the mortgage were those conferred upon
her by her husband, the borrower. Eveland, 976 F.Supp at 726.
The court hinged its decision partially on the fact that, though
the plaintiff had signed documents permitting the lender to
acquire a security interest in her primary dwelling, she only

did so because her husband's attorney "fanned them out . . . [and] only told her that her signature was necessary as a formality." Id. at 722.  The court denied summary judgment because precedent was "devoid of applications" of § 1635 to the "peculiar facts presented in this action." Id. at 726.

Here, the equities do not weigh in Mr. Boster's favor as strongly.  Mr. Boster at all times purported to know and understand the documents he signed, both in his individual capacity and as attorney-in-fact for his mother.  Not only did he sign the Note and Loan Agreement on behalf of his mother, but he also signed the Deed of Trust, pledging both his mother's and his own interest in the property as collateral for the Reverse Mortgage.  Unlike Eveland, the equities in this matter do not counsel in favor of absolving Mr. Boster of the requirement to tender loan proceeds.  It is true that the proceeds of the Reverse Mortgage were disbursed to Wanda Jean Boster, not Mr. Boster, but he has also personally benefited from the Reverse Mortgage: he has enjoyed the benefit of living in the relevant property as his primary residence since at least the consummation of the transaction nearly ten years ago and, eight years after becoming the sole owner upon his mother's passing, there is no evidence that he has made any payments on the loan or the taxes and insurance during that time.

27

Throughout this litigation, Mr. Boster has been forthright that he is unable to tender the loan proceeds to TIAA except for the possibility that he could do so by selling or mortgaging the property at issue.  Permitting Mr. Boster to keep the property and rescind the Reverse Mortgage without tendering its proceeds to TIAA would result in the exact windfall that binding precedent has consistently cautioned against.  <u>See</u> <u>Lavis</u>, 40 F.4th at 191; <u>Powers</u>, 542 F.2d at 1221; <u>Shelton</u>, 486 F.3d at 820; <u>see</u> <u>also</u> <u>Yamamoto v. Bank of N.Y.</u>, 329 F.3d 1167, 1172 (9th Cir. 2003).

Accordingly, even if Mr. Boster's Recission Notice were timely, the court will not effectuate rescission of the Reverse Mortgage in the absence of Mr. Boster demonstrating an ability to tender the property given to his mother in connection with the Reverse Mortgage within a reasonably prompt period.

d.   Tender Amount

When an obligor exercises their right of recission under TILA, the obligor "shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value."  15 U.S.C. § 1635(b).  As discussed above,

28

the equitable aim of recission under TILA is to return the parties to the status quo ante.  To that end, a rescinding obligor must "proffer full restoration" by tendering the loan proceeds or reasonable value thereof "plus the amount of all funds expended by the defendant in discharging other debts of the plaintiffs."  Powers, 542 F.2d at 1220.

If Mr. Boster seeks to effectuate rescission, he must be willing and able to tender not only all loan proceeds, but also the value of the property tax and insurance premiums that the Reverse Mortgage required the borrower to pay but neither he nor his mother did.  As of September 25, 2023, "[t]he draws to Mrs. Wanda Boster on the reverse mortgage line of credit totaled $43,684.35."  Joint Stipulation at ¶ 1.  Additionally, as of that same date, uncontroverted evidence demonstrates that defendant or its successor-in-interest paid "$4,342.89 in real property taxes on the property at issue and $4,332.38 in insurance premiums on the property at issue."  See id.; see also Rusk Aff. at ¶ 12, 13 (ECF No. 160-4).[8]  On July 6, 2015, Mrs. Boster made a payment "on the loan at issue" in the amount of $668.82.  Id. at ¶ 14.  Thus, as of September 25, 2023, the undisputed evidence indicates that the total amount that

---

[8] The Rusk Affidavit is dated September 22, 2023.

defendant or its successor-in-interest paid, less Mrs. Boster's singular payment, appears to be $51,690.73.

Accordingly, before the court can effectuate recission, Mr. Boster must demonstrate that he is willing and able to tender $51,690.73 — or an updated amount later proven - to defendant.

## V.   Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment as to whether recission has been effectuated without tender is DENIED.  Both plaintiff's and defendant's motions for summary judgment as to the timeliness of Mr. Boster's Recission Notice are DENIED.

The defendant's motion for summary judgment as to the tender requirement is GRANTED to the extent recission is not effective without tender.  However, because TIAA disputes the timeliness of Mr. Boster's Recission Notice, it remains a genuine question of material fact that must be resolved before the court squarely requires Mr. Boster to indicate whether he will obtain the funds to tender the necessary amount to defendant through the mortgaging or sale of his property, as he has indicated a potential willingness to do.

Accordingly, this matter will go to trial on the sole remaining question of material fact: whether the notices Mr. Boster received at the loan closing were legally insufficient such that his February 27, 2017, Recission Notice was timely.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: January 17, 2024

John T. Copenhaver, Jr.
Senior United States District Judge